Okay, Mr. Durett. May it please the Court, my name is Brant Durett. I'm here on behalf of the appellant, Al Cohen. Before I begin, I'd like to address an error in our brief. There's a table on page 4 that has complete garbage for references to the record. Keep your voice up, please. Our page 4 table, the record references are inaccurate. I've got corrected references to the record to submit to the Court. In this appeal, the Court's asked to decide one issue, and that one issue is whether or not a denial letter under standard flood insurance policy has to specifically identify the property denied in order to invoke the limitations provisions in the policy. The district court felt like the denial letter in this case did not have to identify the specific item of property. We looked for cases and could find none where what constitutes an effective denial letter under their standard flood insurance policy was defined. Neither the defendant nor the Court, and I doubt this Court, would locate any cases that are directly on point with this issue. So, in essence, it's a case of first impression. Whether or no case law, courts need to use their common sense in interpreting provisions in the statute and in policies. And common sense says that when you're denying a claim, particularly if it's a partial denial of a component of the claim, like the contents are in this case, you need to identify what property is specifically denied. In this case, the letter said that they were denying coverage for various items of property. They also indicated, Allstate did, that there was a line item estimate enclosed with the letter, which there was not. So, implicitly, Allstate understood that to deny an aspect of contents, they needed to include the identity of that contents. But, moreover, more expressly, FEMA, the governing agency that oversees the standard flood insurance policy, promulgated guidelines for mandatory enclosures in all denial letters a year after this event occurred, wherein they said that property must be specifically identified, and if there's an amount, and if it's applicable, to include it in there as well. They also said that they wanted to prohibit the use of general terms, such as various items. General terms, in this case, don't give specific information and don't inform the policyholder of what is being denied, sufficient to invoke his rights or obligations to pursue his lawsuit within a year. As I said, there's no legal authority to support this out there that we've been able to locate, and we're asking the court to use its common sense in interpreting the language that when they have to have an effective denial, you have to identify the property denied. The defendant makes a number of arguments in their brief defense, one of which is that Mr. Cohen admitted that it was a denial in his complaint. Mr. Cohen did admit there was a denial in his complaint, but that was after December, the adjustment of the claim, where he didn't get paid for it. The lawsuit was filed nine months after that. Allstate also argues that the insurer is charged with knowledge of what is and is not covered, in that he references U.S. Supreme Court decisions in Merrill and Heckler, as well as this court's decisions in Spunge and Loeback. All of those cases are distinguishable from the facts at bar. Those cases involve policy procurement misrepresentations. There are no policy procurement misrepresentations involved in this case. What's involved in this case is a failure to deny a claim adequately, such that the obligation to pursue a lawsuit— What's your understanding of the purpose for requiring that property or items are specifically identified in a letter of denial? What's the purpose of that? The purpose is that you can't just generally deny. You can't just say, I deny your contents. Well, I understand you're saying you can't just generally deny, but if there's some requirement that you can't do that, what's the reason for the requirement that you can't do that? That's what I'm asking you. The reason is you need to give the policyholder notice that he understands that his rights are invoked and that he has an obligation to pursue them in a court of law. So if I get a letter that's vague, what prevents me from putting in a call and saying, what part of my claim are you not going to pay? You could do that. Nothing prevents the policyholder from doing that. And, in fact, this case is noted in the history. There was a subsequent denial in August of the same contents claim, execution of a non-waiver letter, continuing adjustment of the claim, and payment in December. So it wasn't until December that the insured actually figured out what it was that his claim had been denied, because there had been no communication in the entire time period up to that point telling him what had been denied. Did he act? I don't think he did. I'm not sure. I haven't seen any correspondence that he did. Anyway, the remainder of the defense's argument is we don't have a real beef with. There is a limitations period in the policy. It is to be strictly construed. Any claim of NFO relief or waiver or estoppel, not applicable to this type of proceeding. The Westmoreland decision is relevant to the decision to some point in that failure to repair prior flood-damaged property in order to be covered under a subsequent flood is an ambiguous provision in the policy. It's not in the property not covered. It's not in the exclusions. And a district court in this circuit has held that it's ambiguous and interpreted it in favor of the insured in the case involved in that case. So to the extent that the policy or the denial letter referenced an exclusion, it's not an exclusion that's applicable to the policy today. In closing, there are no other questions. It's pretty clear that if you want to take advantage of a benefit of the policy, you also have to assume its burdens. In this case, all state wants to take advantage of the limitations clause. But to do that, it needed to invoke an appropriate denial. There is no denial in this case that's adequate to give the policyholder notice of his rights to go forward. For that reason, we ask the Court to reverse and remand this case. No further proceedings. Thank you, Mr. Shadratt, and you've saved time for rebuttal. Mr. Tracz? Good morning, Your Honors. William Tracz on behalf of all states. There were several denials in this letter, but only two are applicable for the appeal here. And I'm going to start with the July 19th denial letter, because that's where the Court did its analysis on, and I'll briefly touch on the July 9th denial letter. But in looking at the July 19th letter, there is some procedure that leads up to that that gives it a lot of context, which is put forth in all states' motion for summary judgment. This is an April 2016 flood loss. The plaintiff decided to hire a public adjuster, and the public adjuster did the notice of loss to all states, hey, I have a loss, two weeks later on May 4th. And during that time, all states had submitted on May 24th, 25th, a proof of loss for the building only to their public adjuster saying, here is what we saw for the building damages. The contents claim had not been resolved at that time. They were waiting on documentation because there was a prior loss from May of 2015. And that proof of loss was submitted to the jurid. All states followed up a week later on June 2nd saying, we gave you proof of loss, please sign it so we can pay you for the building damages. At that point, the very next day, Mr. Caballa, the public adjuster, sends on June 3rd their own proof of loss saying, all state, I am entitled to $93,000 for my building and contents. As all state is required under FEMA's guidelines to respond to a proof of loss within 7 to 10 days, it denied that proof of loss. The proof of loss is part of the claim. Denied it saying there is a lack of documentation, nothing was attached to your proof of loss. Finally, after that, July 19th, that's when the second denial letter was submitted. An important date here is July 21. That's when the building claim was paid. On July 19th, Mr. Cohen had signed the proof of loss and his public adjuster had submitted it to all state. They had signed the all state proof of loss for the $55,000. Two days later, once it goes through the check process, the check goes out on July 21. The claim is paid after that. Another key factor here is December. Later in the year, the contents claim was paid. Only $3,800 was paid on the contents. That's significant. The building portion of $55,000 was paid. There's about three or four inches of water in the home from this flooding event. Only $3,800 was paid under the contents because a lot of the items the plaintiffs were claiming had been paid in the May 2015 loss and the parties had to work through that process. My opposing counsel had indicated that nothing had happened between August and December of 2016, and that is false. There is a ton of correspondence between the public adjuster and Mr. Cohen asking for receipts and invoices from replacement of your prior loss of May 2015 and a ton of correspondence between Mr. Caballa, the public adjuster, and Allstate. However, that is not a part of the appellate record, but as an officer of the court, I do have to point that out. Our hands were sort of tied in this case because Judge Rosenthal did not allow discovery in this matter. When the suit was filed, we answered. Judge Rosenthal, under her procedures, asked for a joint discovery plan. One was submitted. The parties exchanged Rule 26 disclosures. At that initial conference, Judge Rosenthal went into some of the merits of the case, and that's when we brought up, well, Judge, we may have a time bar issue here as well as a proof of loss issue, and then her response was, okay, before we get into discovery and litigation costs for discovery, I'm giving you a deadline, Allstate, to file a summary judgment on time bar, and plaintiff, you have this deadline to respond. So the only discovery that was done was the exchange of Rule 26 disclosures. So starting with the July 19 letter, part one of that letter, if you want to call it a part, but that letter, there's no dispute that they received that letter. The first part of it is telling the policyholder, we are denying your claim for contents because we need an inventory of the damaged property, and in particular, the actual cash value. That's in bold in that part of the letter. Because the contents list that was submitted by the public adjuster in May had photographs in a list, but it was under RCV. Under the flood policy, contents can only be paid under actual cash value, meaning there must be some depreciation. The second part of that letter is next we're denying coverage for various items because there was a prior loss, and several of the items that you are claiming appears to be paid from the prior loss. And it notifies the policyholder that we would like documentation from their prior loss, and the authority to ask for that documentation is Article 7K. The final part of the denial letter is the building portion. There was a detached garage that was converted into an apartment. Under the rules of the federal program for flood insurance, you have to have a separate policy. If it was a detached garage, it would be fine, but you would be limited to 10% of the building policy limits. But the fact that it was converted into living quarters, you have to have a separate policy for that. Judge Rosenthal had talked about the first and third parts and had agreed with the plaintiff's counsel that, since a partial payment was later made on the contents, that first part somehow is not a denial of the policy. Well, if you use that analysis, then the second part shouldn't be either. So it's not consistent. But as courts have held, continuing to adjust a claim does not waive any of the policy provisions. There are several cases, including the Fifth Circuit, where if you continue to adjust a claim, it does not obviate your requirement to submit a proof of loss. For every dollar amount that you're seeking, you must submit a signed and sworn proof of loss. That same exact analysis also applies to any actions taken by the company in continuing to adjust the claim, does not interrupt or toll your obligation under 7R or your right under 7R. 7J, which is the proof of loss requirement, and 7R, the policy, are both under the conditions precedent part of the policy. If the same analysis applies to 7J, it equally applies to 7R. What the appellant is arguing is the fact that you used the term where various items somehow waives 7R of the policy and you are stopped from making that argument. And based on the two Fifth Circuit cases of Marseilles, Condo, and Monastere, you cannot have waiver and estoppel because of Maryland Heckler. And courts across the country have relied upon the Maryland Heckler decisions in that since your flood policy is itself a federal regulation, you're charged with knowledge and knowing the law. You can't claim ignorance. Now, looking at the July 9th letter, my client respectfully disagrees with Judge Rosenthal's analysis of the July 9th letter. The July 9th letter was you submitted a proof of loss, FEMA's regulations, the manual requires you to respond to that within 7 to 10 days, and a response was given. We are denying your proof of loss. You are claiming $93,000. We are denying it because we need more documentation. The lower court had relied upon the Migliore decision of the Third Circuit, which my client disagrees with the overall ruling of that decision, and it's also distinguishable because in the Migliore case, Fidelity had sent a letter rejecting a proof of loss, but the letter itself says this is not a denial letter. However, Fidelity still made that argument and said, we think that's a denial because you filed suit. And the court went through this analysis under the loss payment provision of the policy is that, okay, well, if you reject a proof of loss, you have certain rights under the policy. You can go to appraisal. You can appeal it. You can file suit. You can submit another proof of loss. But the Migliore court made a huge leap in saying that the denial is dictated by the actions of the policyholder. The denial is dictated by the plain language of the letter. It would create this groundhog day that if you keep submitting a supplemental proof of loss, then your claim would never, the statute of limitations would never run. In the Migliore case, it even went further and said that, narrowly interpreted, this clause provides that a policyholder may not bring suit against the WIO until after his claim has been denied in writing. Well, if that's the case, that puts too much power into the WIO defendants because they would never issue a written denial. Why? Is it in perpetuity? If a policyholder makes a claim, whether through proof of loss, sending a letter, or whatever, the policyholder should be put on notice, A, I'm denying that, and Y. There's also a case we decided to call the St. Germain case, and what that case does is that it takes a step further from the proof of loss analysis to the statute of limitations. Continuing to adjust the claim does not interrupt or toll the statute of limitations. That cannot be waived by the WIO carrier. If you continue to work the claim, you're still on notice that you have one year from that partial denial or denial to bring your suit before the court. It is correct in that there is not a lot of case law about what the courts will say, you must have X, Y, and Z to be considered a denial letter. And I think the reason for that is I think courts are reluctant to state a bright-line rule. I think it should be on a case-by-case basis. What if your letter says, we are not paying you for your request for ALE because it's excluded on the policy? It doesn't say the word reject. It doesn't say the word deny. But that is purely a disallowance of that claim. So I think there is no bright-line rule. I think you look at the language of the actual letter itself and decide, okay, is this a denial of the claim? Unless there are any questions from Your Honor. All right. Thank you, Mr. Trace. Mr. Durrett, you save time for rebuttal. Your Honors, I'll be brief. When you asked me the question about whether or not there had been any questioning of what aspects of the personal or content claim had been denied, it was my understanding it hadn't been. I do understand that there was a lot of communication back and forth between the adjusters. But to my knowledge, none of that communication involved what is actually denied as a result of prior flood loss. Secondly, with regard to the Migliani decision, it's still federal law. And whether or not Allstate disagrees with it, it definitely has an impact on this case. There are different letters that are issued. There's a denial of a proof of loss, meaning your proof of loss is inadequate, and there's a denial of your claim. And when the denial of a proof of loss is issued, it's whether or not that's treated under the Migliani analysis as a denial of the claims, how the policyholder acts. If he submits another proof of loss and it's adjusted, then he rejected that proof of loss. That's what happened in this case. In the Migliani case, the policyholder actually filed suit. And so the court interpreted that to be a denial of the claim, authorizing him to file suit. If there are any other questions, I'll be glad to expand on them. Thank you, Mr. Durrett. The case is under submission.